UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TAMMY V. BIGHAM,                )   3:14CV1725
                               )
          Plaintiff            )
                               )
     v.                        )  JUDGE JAMES G. CARR
                               )  (Mag. Judge Kenneth S. McHargh)
                               )
COMMISSIONER OF SOCIAL         )
     SECURITY,                 )
                               )
                               )
          Defendant            )  REPORT AND
                               )  RECOMMENDATION


McHARGH, MAG. JUDGE

     This case is before the Magistrate Judge pursuant to Local Rule.  The issue

before the court is whether the final decision of the Commissioner of Social Security

("the Commissioner") denying Plaintiff Tamara ("Tammy") V. Bigham's application

for Supplemental Security Income benefits under Title XVI of the Social Security

Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore,

conclusive.


I.  PROCEDURAL HISTORY

     On April 21, 2011, Plaintiff Tamara V. Bigham (hereinafter, "Bigham")

applied for Supplemental Security Income benefits.  (Doc. 12, tr., at 134-142, 159-

166.)  Bigham's application was denied initially and upon reconsideration.  (Tr., at

43-52, 53-63, 72-78, 82-88.) On December 20, 2011, Bigham filed a written request

for a hearing before an administrative law judge. (Tr., at 89.)

An Administrative Law Judge ("the ALJ") convened a hearing in Toledo on

February 27, 2013, to hear Bigham's case. (Tr., at 24-42.) Bigham was represented

by counsel at the hearing. (Tr., at 26.) Joseph Thompson ("Thompson"), a

vocational expert, attended the hearing and provided testimony. (Tr., at 26, 37-41.)

On April 23, 2013, the ALJ issued his decision applying the standard five-

step sequential analysis[1] to determine whether Bigham was disabled. (Tr., at 6-

---

[1] Social Security Administration regulations require an ALJ to follow a five-step
sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§
404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528,
534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in
> substantial gainful activity during the period of disability. 20 C.F.R. §
> 404.1520(a)(4)(i). Second, the claimant must show that he suffers from
> a severe medically determinable physical or mental impairment. Id. §
> 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment
> meets or medically equals one of the impairments listed in 20 C.F.R.
> Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. §
> 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the
> claimant's residual functional capacity, the claimant can perform his
> past relevant work, in which case the claimant is not disabled. Id. §
> 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the
> claimant's residual functional capacity, as well as his age, education,
> and work experience, the claimant can make an adjustment to other
> work, in which case the claimant is not disabled. Id. §
> 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but
> the burden shifts to the Commissioner at step five. *Walters v. Comm'r
> of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

19.)  Based on his review, the ALJ concluded Bigham was not disabled.  (Tr., at 9,

18-19.)  Following the issuance of this ruling, Bigham sought review of the ALJ's

decision from the Appeals Council.  (Tr., at 5.)  However, the council denied

Bigham's request for review, thus rendering the ALJ's decision the final decision of

the Commissioner.  (Tr., at 1-3.)  Bigham now seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. § 1383(c).

Bigham briefs two issues:

1.  The ALJ erred by not granting controlling weight to the treating
source opinion that was supported by objective medical evidence and
not inconsistent with other substantial evidence.  Additionally, the
ALJ failed to provide an adequate evaluation of the treating source
opinion once [again?] failing to accord controlling weight to his opinion.

2.  The ALJ's RFC determination is not supported by substantial
evidence because the hypothetical relied on in forming the RFC does
not adequately reflect Ms. Bigham's physical capabilities.  In providing
for 2 additional breaks, the ALJ does not consider a number of
significant variables; variables that even if considered could not be
accounted for given the medical evidence of record.

(Doc. 13, at 2.)

## II.  PERSONAL BACKGROUND INFORMATION

Bigham was born on October 24, 1977, and was 33 years old as of the date of

her application.  (Tr., at 17, 29.)  Bigham has a high school education.  (Tr., at 17,

30, 161.)  She has no past relevant work.  (Tr., at 17, 38.)

---

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

### III.  MEDICAL EVIDENCE[2]

In her application, Bigham reported that "all of the physical or mental conditions" that limited her ability to work were Crohn's disease, anemia, chronic low back pain, and left arm pain.  (Doc. 12, tr., at 160.)

The ALJ found that Bigham has the following severe impairments:  Crohn's disease, anemia, chronic back pain, left arm pain, status post back laminectomy with no neuromuscular deficit, status post shoulder surgery, diarrhea, biliary pancreatitis (status post laparoscopic cholecystectomy), ulcerative colitis, and degenerative disc disease of the lumbar spine.  (Tr., at 11.)

Bigham contests the weight that the ALJ gave to the opinion of her treating physician, Terrence Johnson, M.D., and particularly in regard to the impact of her Crohn's disease on her ability to sustain employment.  (Doc. 13, at 8-15.)  Thus, the court will focus its presentation of the medical evidence to evidence concerning that issue.

### A.  Crohn's Disease

At the hearing, Bigham testified that her biggest obstacle to employment was limitations arising from her Crohn's disease.  (Tr., at 31-33.)  She testified that the disease makes her feel fatigued, and compels her to use a toilet several times during the day.  On bad days, which she testified occur three to five times a week, she may

---

[2] The following is merely a summary of the medical evidence relevant to the undersigned's decision.  It is not intended to fully reflect all of the evidence the undersigned took into consideration.  Given the contested issues in this case, the primary focus is on evidence concerning her Crohn's disease.

need to visit the bathroom as many as ten times.  (Tr., at 32.)  When she has such a flare-up, she gets intense abdominal pain, needs to urgently rush to the bathroom, and often has bloody diarrhea.  (Tr., at 33.)

Sushil Jain, M.D., at Lutheran Hospital, provided treatment for Bigham's Crohn's disease, and its complications, for over four years.  According to Bigham, Dr. Jain confirmed that Bigham suffered from Crohn's disease, with perianal abscesses, anal fistula, and anemia.  (Doc. 13, at 6[3].)

Dr. Jain began treating Bigham in October 2008.  At that time, she had a long-standing, unhealed anal fissure.  In September 2008, she developed a perianal abscess.  She had surgical intervention for those problems.[4]  At the time of the October consult, Bigham denied any abdominal pain, nausea or vomiting.  She reported two formed bowel movements per day, but frequently saw red blood mixed in with the stool.  (Tr., at 285.)  Dr. Jain adjusted her medications, and planned on

---

[3] Unfortunately, many of the purported citations to the record in Bigham's brief in support do not identify the correct document in the record.  For example, at this point, the brief discusses treatment by Dr. Jain.  However, the first actual citation (tr., at 336) is to a consultation record from a Dr. Robert Neidich, a separate practitioner.  The second citation (tr., at 339) is a treatment record from Dr. Neidich.  The third citation (tr., at 446) is to colonoscopy exam images.  The fourth (tr., at 468) leads to an authorization form to disclose information to the SSA.  In none of the cited documents does Dr. Jain confirm Bigham's Crohn's disease, as the brief states.  See doc. 13, at 6.  To the extent possible, the court has used the citations provided by the Commissioner.

[4] On October 21, 2008, Bigham had a surgical procedure with Dr. Charles Morrison, to drain abscesses and for the placement of setons.  (Tr., at 279-280.)

a follow-up visit to make further adjustments once her abscess was healed.  (Tr., at 286.)  Terrence Johnson, M.D., was copied on Dr. Jain's reports.  (Tr., at 287.)

On April 15, 2010, Bigham reported to the office of Shaneeta Johnson, M.D., of Van Wert Hospital, with a complaint of "draining perirectal abscess for one week."  She reported the area was painful and continued to drain.  Dr. S. Johnson[5] noted a history of Crohn's disease, with multiple recurrent abscesses, fistulas and fissures.  Bigham reported her last previous abscess had been one year ago.  Although she was brought to the hospital for possible drainage of the perirectal abscess, it was discovered that she had severe anemia, and she was admitted for a transfusion.  (Tr., at 229, 292, and 228.)

The following day, Dr. S. Johnson performed a surgical procedure for the incision and drainage of a large right perirectal abscess with debridement.  (Tr., at 240, 293.)  Dr. Terrence Johnson was copied on all of Dr. S. Johnson's reports of examinations and procedures.  (Tr., at 229, 240, 292, 293.)

In January 2011, Bigham had a follow-up appointment with Dr. Jain.  (Tr., at 658, referencing said visit.)  Bigham was seen by Amy Nugent, N.P., at Lutheran, on January 31, 2011, for her follow-up appointment on her Crohn's diagnosis. Bigham reported taking Cimzia injections and sulfasalazine pills.  She was also taking prednisone.  Nugent noted a history of proctitis, perianal fistula, and perianal abscess.  Bigham reported that she had two seton drains in place, but

---

[5] To distinguish Shaneeta Johnson, M.D., from Bigham's longtime doctor (Terrence Johnson, M.D.), Shaneeta Johnson, M.D., will be referred to as Dr. S. Johnson.

6

that two others had fallen out.  She had not followed up with the surgeon Dr. Morrison recently due to monetary issues and being uninsured.  "Overall she feels like Cimzia helps her feel better."  Bigham denied any pain or weight loss, and reported about three bowel movements daily, with "some intermittent rectal bleeding."  She requested updates to her current  medications.  (Tr., at 450.) Terrence Johnson, M.D., was copied on this report.  (Tr., at 451.)

Bigham filed her application for Supplemental Security Income benefits on April 21, 2011.  (Doc. 12, tr., at 134-142, 159-166.)

On June 28, 2011, Sushil M. Sethi, M.D., conducted a consultative physical exam.  Dr. Sethi reviewed Bigham's medical history (as above), including her Crohn's disease, her surgery with Dr. Morrison, and back and arm surgery in 2004. (Tr., at 459-460.)  Dr. Sethi noted her history of anemia, but stated she had not required any intervention lately.  (Tr., at 459.)

Dr. Sethi explored her range of motion in her arms and legs, and conducted a neurological exam.  (Tr., at 460-461.)  Dr. Sethi provided a Medical Source Statement as follows:

> Based on my objective findings, the claimant's ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects may be limited to medium labor.  She can sit 4-6 hours, walk 2-3 hours and stand 2-3 hours in an 8-hour shift.  She can carry 15-20 lb frequently and 30-50 lb occasionally.  Her hearing, speaking and traveling are normal.

(Tr., at 461.)

Despite Dr. Sethi's recognition of Bigham's history of Crohn's disease, his physical examination appeared to focus on areas unrelated to Crohn's, but rather seemed more focused on her complaint of back pain.  See generally tr., at 460-461; see also tr., at 462-465 (manual muscle testing, range of motion, etc.).  Dr. Sethi offered no opinion as to whether (or not) Bigham's Crohn's disease would impact on her ability to work.  (Tr., at 461.)

On July 18, 2011, Bigham saw Courtney Linton, P.A., for a complaint of fatigue and dizziness.  She reported tiring easily, and dizziness which comes and goes.  Bigham reported active Crohn's with hematochezia, bloody diarrhea, abdominal pain, and nausea.  She reported vomiting two to three times a week, "melena bloody," and diarrhea.  (Tr., at 488.)

Linton reported discussing with Bigham the need to follow up with GI, but Bigham declined because of cost (no insurance).  Linton had advised Bigham that she would need to pay at the time of service.  (Tr., at 489-490.)

On August 30, 2011, Bigham visited Adam Houg, M.D., complaining of abdominal pain.  Dr. Houg noted nausea, vomiting, epigastric pain, hematochezia, bright red blood per rectum, but no diarrhea at present.  (Tr., at 480.)  Dr. Houg recommended a CT scan of her abdomen and pelvis, and to see her GI doctor.  Although Dr. Houg "discussed the worrisome nature of peritoneal signs and what this could mean," Bigham declined his plan "due to finances."  Dr. Houg assumed this was a Crohn's flare, and treated it short term with prednisone.  (Tr., at 482, 484.)

8

On April 10, 2012, Bigham was examined by Terrence Johnson, M.D.  (Tr., at 530-533.)  Bigham was complaining of back pain, and numbness in the right hand and foot.  (Tr., at 532.)  At that exam, Bigham reported no gastrointestinal symptoms, and no heartburn.  (Tr., at 531.)  However, she reported rectal pain, and that she had had several abscesses drained.  (Tr., at 532.)  Dr. Johnson assessed her with rectal abscess, closed fractures in the hand, low back pain, and anemia.  He found her disability would last between 30 days and nine months.  (Tr., at 533.)

On May 14, 2012, Bigham returned to Dr. Jain.  She reported to Dr. Jain that she was hospitalized at Parkview Hospital in September 2011, and had blood work performed, CT scans, and a colonoscopy.  Dr. Jain noted that he did not have any of those records.  (Tr., at 536.)

At her May 2012 visit, Bigham reported to Dr. Jain that she continued to have approximately five loose stools per day, and that she saw red blood with every bowel movement.  She has occasional abdominal pain.  She denied any nausea or vomiting.  (Tr., at 536, 553.)  Dr. Jain continued her medications, and recommended a follow-up visit in three months.  Terrence Johnson, M.D., was copied on Dr. Jain's report.  (Tr., at 537.)

On June 15, 2012, Dr. Jain wrote a letter to counsel.  He reported that Bigham had been under his care, and noted her "extensive history of colitis due to Crohn's disease."  Dr. Jain also reported that Bigham had "significant problems with perianal abscesses and perianal fistulas in the past which have required

9

surgery. She continues to have frequent diarrhea along with rectal bleeding." (Tr., at 564.)

Dr. Jain stated that Bigham is currently being treated for Crohn's disease, but continued to have debilitating symptoms. "For this reason, it will be very difficult for her to maintain any consistent, meaningful employment." (Tr, at 564.)

Dr. Johnson also provided a letter to counsel, at Bigham's request, on June 21, 2012. Dr. Johnson said that Bigham was a long time patient, whose "many medical conditions . . . make her totally disabled." Dr. Johnson stated that Bigham has a severe case of Crohn's disease with bloody diarrhea, anemia secondary to the Crohn's as well as ulcerative colitis. "With these two conditions, she is having frequent stools as she must head to the bathroom at the first urge of stooling or she will be incontinent." Dr. Johnson also noted several episodes of rectal abscesses with MRSA infections, and frequent fatigue. (Tr., at 544.)

On August 8, 2012, Bigham appeared at Lutheran for a follow-up for her Crohn's, and was seen by Deborah Tannehill, N.P. (Tr., at 549-552.) Bigham reported that she had 3-5 bowel movements per day, loose to formed, with occasional nocturnal stools. She continued to see bright red blood with each bowel movement. She reported occasional abdominal discomfort, and occasional nausea. (Tr., at 549.) Her medications were continued. (Tr., at 550.)

Dr. Terrence Johnson provided a Medical Source Statement on February 21, 2013. (Tr., at 694-698.) He found that Bigham was capable of lifting and carrying up to 10 pounds frequently, and up to 20 pounds occasionally. (Tr., at 694.) He

10

found that Bigham was capable of sitting, standing, or walking up to an hour (each) at a time without interruption, and for two hours (each) total in an 8 hour work day. (Tr., at 694-695.)  He found that Bigham could frequently use her hands or feet in the full range of activities (reaching, handling, etc.) queried.  (Tr., at 695.) "Postural activities" were limited to occasionally climbing stairs and ramps, and balancing.  (Tr., at 696.)  As to environmental limitations, Dr. Johnson stated that Bigham could never be exposed to unprotected heights, or moving mechanical parts, but otherwise could occasionally be exposed to the conditions listed.  (Tr., at 697.)

Dr. Johnson stated that the particular medical or clinical findings which supported his assessment were: "Chronic back pain, status post laminectomy; Crohn's disease of colon - rectum; suppressed immune system; fatigue from anemia." (Tr., at 697.)  Dr. Johnson noted that sitting and standing caused back pain.  He also noted that Bigham had to use the restroom frequently.  Dr. Johnson stated that the limitations were first presented in 2004, and that they had lasted or would last for 12 consecutive months.  (Tr., at 698.)

## B.  Back Pain

As for her back and arm problems, beyond those issues already mentioned above, Bigham had surgery on both her back and left arm in 2004, as the result of a car accident.  (Doc. 13, at 3; tr., at 459-460.) That same year, she had an MRI of her lumbar spine, which revealed moderate disc degeneration, and herniation, at L4-L5. (Doc. 13, at 3-4; tr., at 316.)  An MRI in 2011 showed disc bulge at L4-L5 with facet joint osteoarthritis, and a small central disc protrusion at L5-S1, with slight nerve

11

root compression. (Doc. 13, at 4; tr., at 565.)  Bigham complained of back pain, and numbness in the right hand and foot, at her April 2012 visit to Dr. Johnson.  (Tr., at 532.)

## IV.  TESTIMONY OF VOCATIONAL EXPERT

The vocational expert, Joseph L. Thompson, testified.  The ALJ stated that, based on limited earnings, Bigham had no past relevant work.  (Doc. 12, tr., at 38.)

The ALJ posed a hypothetical question concerning an individual of the same age, education and work experience, with a residual functional capacity for medium work.  The hypothetical person would have limitations of occasional climbing of ladders, ropes, and scaffolds; frequent climbing of ramps and stairs; frequent stooping, kneeling, crouching, and crawling; frequent use of the upper left arm and hand for reaching, handling, and fingering; and, environmental limitations to avoid concentrated exposure to moving machinery and unprotected heights.  The hypothetical individual must be allowed to consistently take two extra bathroom breaks of five to ten minutes per eight hour workday.  The vocational expert was asked whether there would be any work available for an individual with such a residual functional capacity.  (Tr., at 38.)

Thompson responded that sample positions in the medium unskilled occupational base would include:  (1) dishwasher, DOT 318.687-010, 10,000 jobs statewide, and 300,000 nationally; (2) janitor, 381.687-010, 21,000 jobs statewide,

and 800,00 nationally; and (3) laundry worker, 361.684-014, 5,000 jobs statewide, and 200,000 nationally.  (Tr., at 38-39.)

The second hypothetical posed by the ALJ retained the same limitations, but at the light exertional level.  Thompson provided sample light unskilled occupations, such as, (1) folder, 369.687-018, 3,000 jobs statewide, 60,000 nationally; (2) production inspector, 739.687-102, 3,000 jobs statewide, 40,000 nationally; and, (3) cleaner, 323.687-014, 5,000 jobs statewide, 130,000 nationally.  (Tr., at 39.)

The third hypothetical asked by the ALJ retained the original limitations, but modified to the sedentary exertional level.  The VE answered that sample sedentary unskilled occupations would include: (1) order clerk, 209.567-014, 2,000 jobs statewide, and 100,000 nationally; (2) bench worker, 715.684-026, 900 jobs statewide, 12,000 nationally; and, (3) assembler, 713.687-018, 800 jobs statewide, 24,000 nationally.  (Tr., at 39.)

The ALJ then asked the vocational expert to explain the tolerance for workers taking breaks over and above the standard two 15-minute breaks (and a lunch period), in competitive employment.  The VE responded, "There would be additional unscheduled breaks available of one to two times per eight-hour shift fo 10- to 15-minute duration, noting that any time off task, inclusive of the breaks, more than 20 percent of the workday, would eliminate all employment."  (Tr., at 39.)

13

The VE also testified that the norm relating to absences "would be one to two days per month, such that if a person is consistently absent at that level, that eliminates all employment."  (Tr., at 40.)

Counsel for Bigham asked the vocational expert whether an individual who was able to sit a total of two hours, stand a total of two hours, and walk a total of two hours (all in an eight-hour day), would consistent with competitive employment.  The VE answered that, "by regulation alone, it would mean less than full-time work, and would therefore eliminate all employment."  (Tr., at 40.)

Counsel also asked how many additional five- to ten-minute breaks per eight-hour shift would be tolerable.  The VE answered that, typically it is the one to two he testified to earlier, but said three may be tolerable if they're of shorter duration, but if it begins to extend beyond being off-task more than 20 percent, it presents an issue.  (Tr, at 40-41; see also 39.)


## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his April 23, 2013, decision:

> 1.  The claimant has not engaged in substantial gainful activity since April 21, 2011, the application date (20 CFR 416.971 et seq.).

> 2.  The claimant has the following severe impairments:  Crohn's disease, anemia, chronic back pain, left arm pain, status post back laminectomy with no neuromuscular deficit, status post shoulder surgery, diarrhea, biliary pancreatis (status post laparoscopic cholecystectomy), ulcerative colitis, and degenerative disc disease of the lumbar spine (20 CFR 416.920(c)).

14

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except:  postural limitation of occasional climbing of ladders, ropes or scaffolds; frequent climbing of stairs and ramps; frequent stooping, kneeling, crouching and crawling; frequent use of the upper left extremity for reaching, handling, and fingering; environmental limitation to avoid concentrated exposure to  moving machinery and unprotected heights; and allowed to take consistently 2 extra 5-10 minute breaks per 8 hour workday.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on October 24, 1977, and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 916.964).

8.  Transferability of job skills is not an issue because the claimant does not have any past relevant work (20 CFR 916.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 916.969 and 916.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, since April 21, 2011, the date the application was filed (20 CFR 416.920(g)).

(Doc. 12, tr., at 11-13, 17-18.)

The ALJ found that Bigham's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however, he found

15

that Bigham's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible for the reasons explained in the decision. The ALJ noted that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.  (Tr., at 15.)

The ALJ pointed out that there were inconsistencies in Bigham's testimony and the treatment evidence of record.  The ALJ noted, for example, that Bigham testified that she feels frequently fatigued and naps two to three hours a day. However, the ALJ stated that this complaint did not appear in her treatment records.  The ALJ found that such inconsistencies suggest that the information provided by Bigham generally may not be entirely reliable.  (Tr., at 15.)

The ALJ also considered other factors, such as Bigham's use of medications. (Tr., at 15, citing SSR 96-7p.)  Bigham has been prescribed the same medications for several years, and the ALJ noted that Bigham for the most part has reported no side effects from her medication, other than grogginess from her pain medication. (Tr., at 15-16.)  The ALJ stated:  "It would appear that these medications are relatively effective at controlling her symptoms, as there has [sic] not been significant changes made by her treating physicians.  Notably, [Bigham] remains able to engage in regular daily activities such as driving."  (Tr., at 16.)

In summary, the ALJ stated that the evidence cited in the decision showed that Bigham's allegations regarding the extent of her symptoms and her limitations were not fully credible.  "However, [Bigham's] complaints have not been completely

16

dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole." (Tr., at 17.)

The ALJ accorded the opinion of gastroenterologist Dr. Sushil Jain "little weight" because the ALJ said Dr. Jain based his opinion on treatment that occurred prior to the application date, which the ALJ said was not reflective of Bigham's condition after the application date. (Tr., at 16.)

The ALJ also gave "little weight" to the opinion of her primary care provider, Dr. Terrence Johnson, who had concluded that Bigham was totally disabled from gainful employment due to Crohn's disease and ulcerative colitis. The ALJ pointed out that the issue of disability is reserved for the Commissioner, and that the medical evidence showed stability on medication. Additionally, the ALJ noted that Dr. Johnson was not responsible for Bigham's Crohn's disease treatment. (Tr., at 16.)

The ALJ gave "great weight" to the June 2011 opinion of Dr. Sushil Sethi, because the opinion was based on "a very detailed physical examination" of Bigham, as well as being "consistent with the objective diagnostic evidence, including the MRI of the lumbar spine." (Tr., at 16-17.) Dr. Sethi found that Bigham's ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects "may be limited to medium labor." (Tr., at 461.) Dr. Sethi found that Bigham could sit 4-6 hours, walk 2-3 hours and stand 2-3 hours in an eight-hour workday. (Tr., at 16-17, 461.) The doctor also found she could carry 15-20 pounds frequently, and 30-50 pounds occasionally. Id. Although Dr. Sethi

recognized Bigham's history of Crohn's disease, the opinion did not address whether the Crohn's would or would not have an impact on Bigham's ability to work.  See generally tr., at 459-461.

Finally, the ALJ gave the 2011 opinions of the state agency medical consultants "great weight" because they have specialized knowledge in assessing medical findings in the Social Security context, and he found their opinions were "consistent with [Bigham's] treatment history showing stabilization on medications."  The state agency consultants found that Bigham could perform work at the medium exertional level, with frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, and frequent stooping, kneeling, crouching, and crawling.  (Tr., at 17, 49.)

> The medical consultant in July 2011 rejected Bigham's claims of disability:
>
> Medical evidence show that you have had a history of Crohn's disease with some complications as well as back and shoulder surgery.  Despite pain or discomfort, evidence shows that you are able to move about and can use your arms and legs effectively.  Your Crohn's disease has not caused any recent complications or malnutrition.  Evidence shows no current evidence of anemia.  Though you have some limitations, you are not prevented from all work activities.

(Tr., at 51.)

Upon reconsideration in November 2011, a second consultant reached a similar finding, after noting a history of Crohn's with some complications, as well as back and shoulder surgery.  The  consultant found that Bigham's Crohn's disease had not caused any "severe complications or malnutrition," and there was no current evidence of anemia.  The second consultant summarized: "Though you have

18

some limitations, you are not prevented from being able to perform all work activities."  (Tr., at 61.)

The ALJ found that Bigham has not been under a disability since April 21, 2011, the date the application was filed .  (Tr., at 18.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the

record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## VIII.  ANALYSIS

The first issue raised by Bigham is:

> The ALJ erred by not granting controlling weight to the treating
> source opinion that was supported by objective medical evidence and
> not inconsistent with other substantial evidence.  Additionally, the
> ALJ failed to provide an adequate evaluation of the treating source
> opinion once [again?] failing to accord controlling weight to his opinion.

(Doc. 13, at 2.)  The ALJ's April 2013 decision discussed Dr. Johnson's conclusions, and the weight assigned to his opinions, as follows:

20

Dr. Johnson opined on April 10, 2012, that the claimant's disability would be between 30 days and 9 months.  On June 21, 2012, Dr. Johnson opined that the claimant was totally disabled from gainful employment due to Crohn's disease and ulcerative colitis.  Again, these are conclusory statements on an issue reserved for the Commissioner.  The undersigned finds that the conclusion that the claimant is disabled is inconsistent with the medical evidence of record showing stability on medication.  Notably, Dr. Johnson was not responsible for the claimant's Crohn's disease treatment and his opinion that it is disabling is given little weight.

Dr. Johnson completed a medical source statement on February 21, 2013, in which he indicated the claimant is capable of lifting up to 20 pounds occasionally and 10 pounds frequently.  He reported she could sit, stand and walk for no more than two hours each in an eight-hour workday.  He also indicated that the claimant could occasionally climb ramps and stairs and occasionally balance, but could never stoop, kneel, crouch, or crawl.  This opinion is given little weight because it is not supported by the objective diagnostic medical evidence.  The claimant's MRI of the lumbar spine showed only mild degenerative changes.  Notably, the independent medical evaluator indicated that she could squat.  Additionally, Dr. Johnson's treatment records do not reflect significant restrictions.

(Tr., at 16, citations to record omitted.)

The ALJ is correct that Dr. Johnson's opinion that Bigham is totally disabled is a conclusion on the ultimate issue of disability.  Such a conclusion, even by a treating physician, is not entitled to controlling weight, as the issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner.  See 20 C.F.R. § 416.927(d)(1); Vance v. Commissioner of Social Security, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008); Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (opinion that claimant is "disabled" is not a medical opinion); Houston v. Secretary, HHS, 736 F.2d 365, 367 (6th Cir. 1984).  Accordingly,

opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference.  See 20 C.F.R § 416.927(d)(3).

In contrast, Dr. Jain had stated that Bigham was currently being treated for Crohn's disease, and noted its "debilitating symptoms" of "frequent diarrhea along with rectal bleeding."  Dr. Jain did not specifically opine that Bigham was disabled, although he stated "it will be very difficult for her to maintain any consistent, meaningful employment."  (Tr., at 564.)

Bigham argues that the ALJ failed to give Dr. Johnson's treating source opinion the controlling weight it deserved because his opinion was supported by objective medical evidence and was not inconsistent with other substantial evidence of record.  (Doc. 13, at 8.)  Bigham also points out the distinction between a "medical source statement," such as that provided by Dr. Johnson (tr., at 694-698), and the "residual functional capacity" assessment, which is the ALJ's ultimate finding of what a claimant can do, despite her limitations.  (Doc. 18, at 2-3, discussing SSR 96-5p and 20 C.F.R. § 404.1513(b).)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  Id.; 20 C.F.R. §§ 404.1527(c)(2),

22

416.927(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  Vance, 2008 WL 162942, at *3 (citing Jones v. Commissoner, 336 F.3d 469, 477 (6th Cir. 2003)).

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  Blakley, 581 F.3d at 406; Vance, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  Blakley, 581 F.3d at 406-407; Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

Although Bigham argues that the ALJ failed to give Dr. Johnson's opinion controlling weight, the court finds that the ALJ provided adequate reasons in his decision for that weight, and for determining Bigham's RFC as he did.  Reviewing

23

Dr. Johnson's Medical Source Statement, it is apparent that the ALJ adopted most of the specific limits set forth therein.  The ALJ provided good reasons for the weight he assigned to Dr. Johnson's opinion, and the RFC took account of the limits proposed regarding carrying, sitting, and the like.

The second issue raised by Bigham is related to her Crohn's disease as well: "The ALJ's RFC determination is unsupported by substantial evidence because his hypothetical posed to the VE is not an accurate reflection of Ms. Bigham's physical capabilities." (Doc. 13, at 15.)  Bigham questions the ALJ's determination that two additional bathroom breaks (in addition to the ordinary expectation of two breaks, plus a lunch break) would accommodate Bigham's limitations arising from her Crohn's disease.  (Doc. 13, at 15-18.)  Bigham argues that "there is no evidence to support such a conclusion that the ALJ is offering by declaring 2 additional breaks satisfactory." (Doc. 13, at 17.)  Bigham points to her testimony that she was experiencing 6-10 bowel movements per day, often varying due to stress.  Id.

The burden of establishing her disability is Bigham's.  Beyond her testimony itself, there is no medical evidence specifically establishing the number of bathroom breaks which Bigham might require during the workday.

First, her own testimony was that she could require as many as ten bathroom breaks per day, not per eight-hour workday.  Assuming that Bigham was referring to the common sixteen hours of wakefulness, this would average five breaks (on a bad day) per eight hour workday, which is precisely what the ALJ provided in his hypothetical.  If the worst case ten-bathroom-visits includes night time needs,

24

which would expand the "day" to the full twenty-four hours, then the average need per eight hour workday would be less than four, even on a "bad" day.  The court is aware, of course, that the timing of such needs would likely be unpredictable; nevertheless, there is no recommendation from any medical source at to how many bathroom breaks Bigham might require during the workday.

Dr. Jain's June 15, 2012, letter to counsel simply states that Bigham has "frequent diarrhea along with rectal bleeding," which would make employment difficult.  Dr. Jain does not set forth any recommendation as to how many bathroom breaks Bigham might need during the workday.  (Tr., at 564.)

Dr. Johnson's June 21, 2012, letter to counsel states that Bigham's active conditions include a severe case of Crohn's disease, as well as ulcerative colitis, leading to frequent stools where "she must head to the bathroom at the first urge of stooling or she will be incontinent."  Dr. Johnson did not discuss the frequency of these occurrences, nor did he set forth any recommendation as to how many bathroom breaks Bigham might need during the workday.  (Tr., at 544.)

In his Medical Source Statement, which specifically indicates that the purpose is to determine Bigham's "ability to do work-related activities on a regular and continuous basis" (tr., at 694), Dr. Johnson did not raise this issue other than to note that Bigham "has to use restroom frequently."  Again, he does not set forth any recommendation as to how many bathroom breaks Bigham might need during the workday.  (Tr., at 697.)

25

Bigham contends that the ALJ's determination concerning an additional two breaks per workday is "inadequate" because it does not accurate reflect Bigham's limitations.  However, Bigham does not point to any medical evidence of record which specifically recommends a larger number of breaks.  The court cannot find that the ALJ's RFC assessment did not adequate address her limitations, where it appears that the ALJ balanced the medical evidence in the record before him, and the RFC attempted to account for the limitations that Bigham mentioned in her hearing testimony.

The ALJ has the responsibility for reviewing all the evidence in making his determinations.  20 C.F.R. § 416.927(e)(2).  The ALJ evaluates every medical opinion received in evidence.  20 C.F.R. § 416.927(c).  The ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations.  20 C.F.R. § 416.945(a)(3).  Although the ALJ reviews and considers all the evidence before him, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 416.946(c).  Here, the ALJ's findings were supported by relevant evidence and consistent with the record as a whole.  The court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by medical evidence.

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, that decision should be affirmed.

26

## IX.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  July 9, 2015

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).