IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tammy V. Bigham,  Case No. 3:14CV1725

    Plaintiff,

    v.  **ORDER**

Commissioner of Social Security,

    Defendant.

This is a Social Security case in which plaintiff, Tammy V. Bigham, appeals from the Commissioner's decision denying her application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

Bigham objects to the Magistrate Judge's Report and Recommendation (R&R) (Doc. 19) and asks I overrule the R&R and reverse the Commissioner's decision. (Doc. 20).

I have jurisdiction under 42 U.S.C. § 405(g).

For the following reasons, I adopt in full the R&R, and I affirm the decision of the administrative law judge (ALJ).

### Background

Numerous decisions have laid out the facts supporting Bigham's application to the Social Security Administration (SSA), so I only briefly summarize the information here.

Bigham applied for SSI benefits in April 2011. (Doc. 12 at 9). She claimed she had been unable to work since September 2008 due to numerous disabling conditions, including, *inter alia*: Crohn's disease and related rectal conditions, anemia, chronic low back pain and left arm pain. (*Id.* at 160).

1

The SSA denied Bigham's SSI application, both initially and upon reconsideration. (*Id.* at 9). In February 2013, Bigham filed a written request for a hearing before an ALJ. (*Id.*).

During the hearing, Bigham testified because of her Crohn's disease, she needed to use the bathroom six to ten times per day, depending on her stress level. (*Id.* at 32-33). She also stated she could not sit comfortably for long periods because of her Crohn's-related rectal conditions. (*Id.* 34-35). She further testified she suffered from fatigue – due to her anemia – and needed to take two- to three-hour naps every day. (*Id.* at 33-34). Finally, she complained she had difficulty picking things up due to a fractured hand that never healed properly. (*Id.* at 36).

To determine whether Bigham had a qualifying disability, the ALJ undertook the five-step sequential analysis set forth in 20 C.F.R. § 1520(a)(i-v). (Doc. 12 at 6-19). The Sixth Circuit described the analysis in *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004):

> First, the claimant must demonstrate that [she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [her] impairment meets or medically equals one of the impairments listed in [the applicable regulation], he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functioning capacity, as well as [her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.

*Id.* (citations omitted).

The ALJ considered the opinions of two of her treating physicians – her primary care physician (PCP) and her gastroenterologist – that she was disabled from gainful employment. (*Id.* at 16). The ALJ's decision explained in detail the weight afforded the opinions of her PCP:

> [Bigham's PCP] opined on April 10, 2012 that the claimants' disability would be between [thirty] days and [nine] months. On June 21, 2012, [the PCP] opined that the claimant was totally disabled from gainful employment due to Crohn's disease and ulcerative colitis. Again, these are conclusory statements on an issue reserved for the Commissioner. The undersigned finds that the conclusion that the claimant is disabled is inconsistent with the medical evidence of record showing stability on medication. Notably, [the PCP] was not responsible for the claimant's Crohn's disease treatment and his opinion that it is disabling is given little weight.
>
> [The PCP] completed a medical source statement on February 21, 2013, in which he indicated claimant is capable of lifting up to [twenty] pounds occasionally and [ten] pounds frequently. He reported she could sit, stand and walk for no more than two hours each in an eight-hour workday. He also indicated that the claimant could occasionally climb ramps and stairs and occasionally balance, but could never stoop, kneel, crouch, or crawl. This opinion is given little weight because it is not supported by the objective medical evidence. The claimant's MRI of the lumbar spine showed only mild degenerative changes. Notably, the independent medical evaluator indicated that she could squat. Additionally, [the PCP's] treatment records do not reflect significant restrictions.

(*Id.* at 16 (citations omitted)).

The ALJ also discounted the opinion of Bigham's gastroenterologist that it would be difficult for Bigham "to maintain any consistent, meaningful employment. (*Id.* at 16, 564). The ALJ explained that opinion did not reflect Bigham's then-current condition. (*Id.* at 16, 564). The ALJ again noted Bigham's Crohn's disease was under control and had not needed frequent treatment since she started prescribed monthly injections. (*Id.* at 16).

3

The ALJ also considered opinions of several medical consultants, including state-agency medical consultants. (*Id.* at 16-17, 49, 461). Those consultants concluded Bigham could work at a medium exertion level. (*Id.*). For example, one consultant stated:

> Medical evidence shows that you have had a history of Crohn's disease with some complications as well as back and shoulder surgery. Despite pain or discomfort, evidence shows that you are able to move about and can use your arms and legs effectively. Your Crohn's disease has not caused any recent complications or malnutrition. Evidence shows no current evidence of anemia. Though you have some limitations, you are not prevented from all work activities.

(*Id.* at 51).

The ALJ afforded the consultants' opinions "great weight" because they had specialized knowledge in assessing medical findings in the Social Security context, and because he found their opinions were "consistent with [Bigham's] treatment history showing stabilization on medications." (*Id.* at 17, 49).

The ALJ also heard testimony from a vocational expert (VE), (*id.* at 26, 37-41), to whom the ALJ posed a series of hypothetical questions to determine if someone of the same age, education and work experience as Bigham could find work. (*Id.* at 38-39). The VE assumed various levels of residual functional capacity, and concluded someone with Bigham's vocational profile and medical conditions could perform numerous jobs in the state and national economies.[1] (*Id.* at 38-39).

The ALJ also asked the VE to explain tolerance in the workplace for taking more than the standard two, fifteen-minute breaks (plus a lunch break) during the workday. The VE responded,

---

[1] Jobs Bigham possibly qualified for included: 1) medium exertion occupations (e.g., dishwasher, janitor and laundry worker); 2) light exertion occupations (e.g., folder, production inspector and cleaner); and 3) sedentary occupations (e.g., order clerk, bench worker and assembler). (Doc. 12 at 38-39).

4

"[t]here would be additional unscheduled breaks available of one to two times per eight-hour shift of [ten- to fifteen-minute] duration, noting that any time off task, inclusive of breaks, more than [twenty] percent of the workday, would eliminate all employment." (*Id.* at 39).

In light of the above, the ALJ concluded although Bigham had several "severe impairments," (*id.* at 11-13, 17-18), Bigham's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (*Id.* at 15). The ALJ specifically pointed to several inconsistencies in Bigham's testimony and the treatment evidence of record. (*Id.* at 15).

The ALJ also noted Bigham's medications, which she had been taking for several years, "are relatively effective at controlling her symptoms, as there [have] not been significant changes made by her treating physicians. Notably, [Bigham] remains able to engage in regular daily activities such as driving." (*Id.* at 16).

Accordingly, the ALJ determined Bigham was not disabled. (Doc. 12 at 9, 18-19).

The SSA Appeals Council denied Bighams' request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3).

Bigham now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). She raises two legal issues:

> 1) The ALJ erred by not granting controlling weight to the treating source opinion that was supported by objective medical evidence and not inconsistent with other substantial evidence. Additionally , the ALJ failed to provide an adequate evaluation of the treating source opinion once [again] failing to accord controlling weight to his opinion.
>
> 2) The ALJ's [residual functional capacity] determination (RFC) is not supported by substantial evidence because the hypothetical relied on in forming the RFC does not adequately reflect Ms. Bigham's physical capabilities. In providing for [two] additional breaks, the ALJ does not consider a number of significant

5

> variables; variables that even if considered could not be accounted for given the medical evidence of record.

(Doc. 13 at 2).

## Standard of Review

When reviewing a Magistrate Judge's R&R, I make a de novo determination regarding the portions to which plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's decision, I must determine whether substantial evidence supports the ALJ's findings, and whether the ALJ applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. *See* 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra*, 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *see Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

**Discussion**

Bigham objects the Magistrate Judge's R&R is flawed because it fails to conclude: 1) the ALJ's decision violated the "treating physician" rule; and 2) the ALJ improperly relied on the VE's testimony. (Doc. 13 at 2).

**A. The "Treating Physician" Rule**

An ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to those of non-treating physicians. *Gayheart v. Comm'r*, 710 F.3d 365, 375 (6th Cir. 2013).

The so-called "treating physician" rule requires an ALJ to give a treating physician's opinion controlling weight where it is: 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and 2) "not inconsistent with the other substantial evidence in the case record." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *see Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). In other words, an ALJ gives a treating physician's opinion deference only when supported by objective medical evidence. *Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942, *3 (6th Cir.).

Even when a treating physician's opinion is not entitled to controlling weight, an ALJ still must determine how much weight to assign the opinion by applying specific factors set forth in the applicable regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

An ALJ must give "good reasons" for discounting a treating physician's opinion. *Blakley*, 581 F.3d at 405; *Vance*, 2008 WL 162942, *3. Those "good reasons" must have support in the record, and must be sufficiently specific to make clear to subsequent reviewers the weight

7

assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakly*, 581 F.3d at 406-07.

Remand may be appropriate when an ALJ fails to provide adequate reasons explaining the weight assigned to the treating physician's opinion, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 2011 WL 63602, *8 (6th Cir.).

Bigham argues the ALJ failed to give her treating physicians' opinions sufficient weight. (Doc. 13 at 8). She contends objective medical evidence supported the opinions, and they were not inconsistent with other substantial evidence in the record. (*Id.*). Therefore, she reasons, they were entitled to controlling weight. (*Id.*).

The Commissioner responds the ALJ "properly applied the regulations and considered several factors in discounting [the physicians'] opinion[s]. The ALJ properly discussed the record including the medical and non-medical evidence. Thus, the ALJ provided sufficient reasons for discounting [the] opinions and the decision should be affirmed." (Doc. 17 at 14). I agree.

Bigham's argument rests principally on her subjective disagreement with the ALJ's weighing of the divergent medical evidence, which is not a proper basis for reversal where the ALJ provides "good reasons" for discounting certain evidence. (*Id.*). *See Mullins v. Secretary of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 2007) (argument over weight given medical opinions not basis for setting aside ALJ factual findings).

Contrary to Bigham's assertion, the ALJ did, in fact, carefully consider the medical evidence, including Bigham's physical exams documenting her weight and body-mass index, in assessing the severity of her impairments. (Doc. 12 at 12). The ALJ gathered opinions regarding

8

Bigham's condition and ability to work from several medical consultants and the VE. (*Id.* at 16-17, 49, 461). The ALJ also considered inconsistencies in Bigham's testimony and the record. (*Id.* at 15).

The ALJ explained all of this in detail, and, moreover, specified why he discounted the treating physicians' opinions. (*Id.* at 16).

Accordingly, I find "good reasons," *see Blakley*, 581 F.3d at 405, and substantial evidence, *see* 42 U.S.C. § 405(g), support the ALJ's weighing of the treating physicians' opinions. Bigham's first objection to the R&R is therefore unavailing.

### B. The VE's Testimony

Bigham also objects the ALJ improperly relied on the VE's opinion because the "hypothetical posed to the VE is not an accurate reflection of Ms. Bigham's physical capabilities." (Doc. 13 at 15). Specifically, she argues no evidence supports the ALJ's determination two additional bathroom breaks per day (along with the standard two breaks and a lunch break) would accommodate the limitations of her Crohn's disease. (*Id.* at 15-18).

Bigham herself testified, however, she could require as many as ten bathroom breaks *per day*, not per eight-hour workday. (Doc. 12 at 32-33). If she was referring to the common sixteen hours of wakefulness, she would need, on average, five breaks per eight-hour workday (on a bad day). If instead she was referring to a full twenty-four-hour day, then she, on average, would need fewer than four bathroom breaks per eight-hour workday (on a bad day). Either way, the ALJ's hypothetical to the VE took into account Bigham's need for additional bathroom breaks.

Bigham contends the ALJ's determination regarding her need for two additional bathroom breaks per workday is "inadequate" because it does not accurately reflect her limitations. She does not, however, point to any medical evidence of record specifically

9

recommending more than two extra breaks.[2] I therefore find the ALJ's RFC adequately addressed her limitations.

Accordingly, Bigham's second objection also fails.

## Conclusion

In sum, the ALJ is responsible for reviewing all the evidence, including all medical evidence, in making his determination. 20 C.F.R. § 416.927(c)-(e). The ALJ will consider any statements from medical sources, whether or not based on formal medical evaluations. 20 C.F.R. § 416.945(a)(3). Although the ALJ considers all evidence before him, the ALJ makes the final finding as to Bigham's residual functional capacity. 20 C.F.R. § 416.946(c).

I find substantial evidence supports the ALJ's findings of fact, and the ALJ applied the law correctly to those facts. *Brainard* 889 F.2d at 681. I therefore must affirm. 42 U.S.C. § 405(g); *Kinsella*, 708 F.2d at 1059; *see also Mullen v. Bowen*, 800 F.2d at 545.

For the foregoing reasons, it is hereby:

ORDERED THAT

1. Bigham's objections to the Magistrate Judge's Report and Recommendation (Doc. 20) be, and the same hereby are, overruled; and

2. The Report and Recommendation (Doc. 19) be, and the same hereby is, adopted as the order of this court.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[2] I realize, of course, the timing of such needs would likely be unpredictable. But neither of Bigham's treating physicians opined on that issue, (Doc. 12 at 544, 564, 697), so I draw my own conclusions based on her testimony. *See* 42 U.S.C. § 405(g).